OPINION OF THE COURT
Ira B. Warshawsky, J.
The defendant was charged with operating an auto car- *269 dump truck, commonly known as a garbage truck, where the weight on the rear axles was greater than 36,000 pounds, to wit: 62,000 pounds, in violation of Vehicle and Traffic Law § 385 (9). After the People’s case, the defendant moved to dismiss due to the failure of the People to prove a prima facie case as to each element of the crime. Specifically, the defendant argued and one of the People’s witnesses agreed that the police did not check to see if the truck was "loaded” when it was stopped and weighed. The court denied the motion and allowed the defendant to renew his motion upon submission of a memorandum of law at the end of the entire case. Both sides have submitted and the court will now address that issue.
Vehicle and Traffic Law § 385 (9) states: "The weight on any two consecutive axles of a single vehicle or a combination of vehicles, equipped with pneumatic tires, when loaded, and when such axles are spaced less than eight feet from center to center, shall be not more than thirty-six thousand pounds, except where axles are spaced eight feet or greater, but less than ten feet, the weight on those two axles shall not exceed that permitted by paragraph (b) of subdivision ten of this section and, in addition, shall not exceed forty thousand pounds. Axles to be counted as provided in subdivision five of this section.”
The referred to exception deals with axles greater than 8 feet but less than 10 feet apart, and provides that the permitted weight on the axles shall not exceed that allowed by section 385 (10) (b). When we refer to subdivision (10) (b), we see the same phrase, "when loaded”, used in line 2 of subdivision (10). As we proceed first to paragraph (a), the words "total weight” appear and then in paragraph (b) "overall gross weight” is the verbiage used preceding the formula to determine maximum weight. It is apparent to the court that if the exception states that the weight of a vehicle "when loaded” is to refer to gross weight then the main section, Vehicle and Traffic Law § 385 (9), also refers to gross weight. Assuming that it does, how does it effect the defendant’s challenge to the proof of the elements?
Gross weight is defined by Vehicle and Traffic Law § 117 as the weight of any vehicle without load plus the weight of any load thereon. Thus, the People need only prove beyond a reasonable doubt that the gross weight on the two axles in question exceeded 36,000 pounds which would be the weight of the vehicle plus any load, if there is a load. The court finds, *270 therefore, that Vehicle and Traffic Law § 385 (9) applies to vehicles loaded or unloaded which exceed 36,000 pounds. The People are only required to prove, therefore, that the weight on the axles exceeds 36,000 pounds whether the truck was loaded or unloaded. Once they have proven the weight exceeds 36.000 pounds it is irrelevant whether it is loaded or not. (People v Hayes, 60 Misc 2d 208 [Dist Ct, Nassau County 1969].) To find otherwise would be ludicrous.
The legislative intent of our statutes affecting overweight vehicles has been to protect our roads. (Governor’s Spec Comm on Vehicle Weights and Dimensions, Jan. 10, 1969.) A perfect example of this is Vehicle and Traffic Law § 385 (9) and (10). In subdivision (9), you are allowed a certain amount of weight on the axles when they are less than eight feet apart. When they are further apart and the weight can be better distributed with less direct pressure on the road, then greater weight is allowed. It should not matter, therefore, if the truck is loaded or unloaded (Vehicle and Traffic Law § 385 [23]; 1955 Opns Atty Gen 217).
In United States v Goble and United States v Schmidt (companion cases; 44 F2d 224 [SD NY 1930]) cited by defendant, the truck is weighed before any load is checked. The only reason for checking the load is to see if it can be unloaded at the place where it is stopped. There is obviously no reason to check a garbage truck to see if its overload of 26.000 pounds can be placed on the side of the road. The court further concludes it is the weight on the axles, with or without load, that is referred to by statute.
If the court was to conclude otherwise and find that Vehicle and Traffic Law § 385 (9) only applies to a vehicle which is "loaded” then the mere fact that the driver was in the truck when it was weighed would allow the court to conclude the vehicle was loaded (1955 Opns Atty Gen 217) and find against the defendant.
A further extension of defendant’s argument would be that if a vehicle was not loaded it would not be covered by Vehicle and Traffic Law § 385 (9) and other related sections. Thus, an unloaded truck, no matter what weight rested on its axles, would not be covered by the Vehicle and Traffic Law sections meant to protect our roads. It could travel them unimpeded despite its weight. This would be an irrational interpretation not consistent with legislative purpose or common sense.
The defendant’s motion to dismiss at the end of the People’s case is denied.
*271 At the end of the entire case, the defense counsel argued that the stop of the truck was invalid and therefore any evidence seized or obtained thereafter must be suppressed and the case dismissed.
The People’s witness testified to the signs which indicate a truck is or could be overloaded. They include splash guards touching ground, tires ballooned out, diesel stack emitting black exhaust, and the body tilting back toward rear. Each one of these, when taken alone, may not be sufficient to provide reasonable suspicion to stop the vehicle but when taken as a group as in this case, the court finds reasonable suspicion existed to stop the truck and weigh it. (The defendant’s driver testified the vehicle was in a parking lot with a flat tire when the police pulled up. The court chooses to accept the testimony of the officers as to stopping the truck on Long Beach Road and pulling it to the side.)
After the vehicle was stopped, it was weighed by the use of the MD 400 scales by Officers Diem and O’Brien. The court finds that both officers were well trained in the use of this scale and that the scale had been certified as accurate nine months earlier and then two months later. The defendant argues that mechanical devices used so heavily should be certified more frequently. There are no requirements for more frequent certification under law.
The weight on the rear axles was determined to be 62,300 pounds, 26,300 pounds overweight in violation of Vehicle and Traffic Law § 385 (9). The court therefore finds the People have proven the defendant’s guilt beyond a reasonable doubt.
This matter is referred to the Judge sitting in Central Traffic Court, Part One, on August 12, 1987, for sentence pursuant to statute.